**FILED**

**11/25/2022**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

TAMICA J. SMITHSON,
             Pro Se Plaintiff,

vs.

LLOYD AUSTIN, III
*Secretary, Department of Defense*,
             Defendant

Case No.: 1:21-cv-02193-JRS-MJD

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION**

**FOR SUMMARY JUDGMENT**

*I. INTRODUCTION*

Plaintiff, Tamica Smithson, has filed a second Complaint alleging violations of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., and Section 501 of the

Rehabilitation Act of 1973, as amended, 29 U.S.C. §701 et seq, against the Department of

Defense (Education Activity Office)("DODEA"), when it engaged in discriminatory and

retaliatory conduct that was intersectional and based on Plaintiff's disability, reasonable

accommodations, sex and race. A reasonable jury can conclude that Smithson's [Plaintiff]

federally protected rights were violated because she presents sufficient evidence of material facts

in dispute with respect to these claims.

First, the incidents Plaintiff describes are objectively offensive and sufficiently severe or

pervasive to constitute a hostile work environment. Plaintiff has requested and demanded that

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

coworkers not violate her personal space. Colleagues, and even a supervisor [assistant principal] continued to touch, hug, and enter the Plaintiff's personal space. Smithson was subjected to disparate treatment in other ways such as denying her equal access to the workplace after Plaintiff continued to request technology to gain entry or resources. This hostility toward the Plaintiff is severe and pervasive because it continues to take place by the same individuals after the Plaintiff's constant requests to cease.

Second, Plaintiff has sufficient evidence to show that these incidents were based on her race, sex, disability, and/or any protected characteristic or activity. Plaintiff is an African American woman with a disability that causes her to need reasonable accommodations in the workplace. She has filed a previous lawsuit [currently in appeal] for harassment based on these protected classes. The work environment and treatment of Smithson continued to worsen after the filing of the first lawsuit, which led to the filing of this current lawsuit.

## II. STATEMENT OF MATERIAL FACTS IN DISPUTE

1. Plaintiff is an American woman of African descent.

2. Plaintiff has been employed as a science teacher with DoDEA since 2004 and assigned to Vilseck High School, Germany.

3. Plaintiff has worked with the DoDEA agency Virtual School since 2020 as a reasonable accommodation for her medical issues.

4. Plaintiff was hired as a disabled veteran with 30-point hiring preference. She received an honorable discharge from the United States Army.

5. Smithson's home of record is Indianapolis, IN.

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

6. Smithson met or exceeded her employer's legitimate performance expectations during the time that she has been employed with DoDEA and always received favorable performance evaluations.

7. Plaintiff has never been subject of disciplinary actions in DoDEA.

8. Plaintiff has filed assault complaints against at least two of her coworkers since 2018.

9. Plaintiff has filed complaints for disruptions in her work environment since 2017.

10. Plaintiff has filed complaints of disparate treatment in her work environment since 2018.

**B. Procedural History**

3. In April 2018, Plaintiff filed an EEO Complaint in Agency Case No. EU-FY18-054 for physical assault, violation of personal space, and classroom interruptions. These claims were litigated in the case captioned *Smithson v. Austin*, 1:20-cv-03021- JRS-MJD. [ROI EU-FY18-054, at p. 4-5.]

4. In July 2018, Plaintiff amended EEO Complaint that her medical and reasonable accommodation information was maintained in an unauthorized area causing a breach when the front office personnel gained access to the file. Plaintiff discovered this breach in June 2018. [ROI EU-FY18-054, at p. 4-5.]

5. In August 2018, Plaintiff amended the EEO Complaint in Agency Case No. EU-FY18-054 to include retaliation when her reasonable accommodations that she utilized for over eight years were questioned and changed directly after Plaintiff filed the original complaint. [ROI EU-FY18-054, at p. 4-5.]

6. In December 2019, Plaintiff filed a second EEO Complaint in Agency Case No. EU-FY20-013 for retaliation.

7.  In May 2021, DODEA issued a Final Agency Decision in Agency Case No. EU-FY20- 013 in favor of the DoDEA.

8.  In August 2021, Plaintiff filed the instant action based on the May 2021 Final Agency Decision.

9.  In February 2022, Plaintiff filed an Amended Complaint in Agency Case No. EU-FY20-013 asserting that there was continued retaliation like that filed in her original Complaint.

10. In August 2022, the Court granted summary judgment in favor of Defendant on Plaintiff's claims. *Smithson v. Miller*, No. 1:20-CV-03021-JRS-MJD, 2022 WL 4098583, at *1 (S.D. Ind. Aug. 4, 2022). In September 2022, Plaintiff filed a notice to appeal the judgement.

11. In October 2022, Defense entered Summary Judgement on Plaintiff's Agency Case No. EU-FY20-013.

12. This is Plaintiff's response to Defense Summary Judgement.

A.  **Claims A, B and D: Classroom Interruptions**

13. Since September 2017, Villarreal has allowed Plaintiff's classroom instruction to be interrupted on a continuous basis. [ROI EU-FY18-054, at p. 249.]

14. Mr. Villarreal stated their new office staff members were just counseled on best practices on March 29, 2018. [ROI EU-FY18-054, at p. 57.]

15. In December 2019, Wolff says she was told to not interrupt Plaintiff's class, but claims she was told by Plaintiff to come in while Plaintiff was instructing. [Exhibit MW-1, at 23:14-25.]

**16.** Mr. Jacob Johnson claims he entered Plaintiff's classroom during instruction to help with computer issues and stated that he "forgot" that Plaintiff asked to not be interrupted during instruction. [ROI EU-FY20-013, at p. 64.]

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

17. Mr. Villarreal testified classroom interruptions are fairly common, are not unique to Complainant's classroom and the school endeavors to minimize them. Mr. Villarreal stated he has no reason to believe anyone interrupts Complainant due to consideration of her protected classes. (IF, pp. 444-447) [ROI EU-FY18-054, at p. 13.]

**B. Claims C, E, J(a), J(c), and J(d): DENIAL OF EQUAL ACCESS TO WORKPLACE ITEMS AND FACILITIES**

**Refusal to Use Hydroponic System:**

1.  Wolff reads an email when Plaintiff asks about installing the hydroponic system in mid-December 2019.  [Exhibit MW-1, at 16:2-5.]
2.  Wolff states the email gives specific times that that Plaintiff is available to meet [outside of instructional time], but that she was not available during those times. Plaintiff gave times during her preparation periods and after school. [Exhibit MW-1, at 16:10-17.]
3.  Wolff reported to Smithson's classroom during instruction even though Plaintiff gave specific times that she was available. [Exhibit MW-1, at 16:2-5.]
4.  Smithson informed Wolff that her [Plaintiff's] classroom was unsafe for the hydroponic system. [Exhibit MW-1, at 17:5-11.]
5.  Wolff denies that Plaintiff asks for hydroponic system to be placed in Ms. Holt's former classroom [# 218] and denies having an email requesting the system be moved that classroom [Exhibit MW-1, at 17:12-21.], [Exhibit MW-1, at 21:20-24.]
6.  Wolff claims to not remember if Holt's former classroom was being utilized at that time. [Exhibit MW-1, at 17:22-18:10.]

**The January 2021 Login Issues:**

7. Smithson could not get proper assistance when she was forced back into the brick-and-mortar in January 2021. [Exhibit 10], [Exhibit 12], [Exhibit 7], [Exhibit 6], [Exhibit 11]

**The Biology Textbooks:**

18. Mr. Villarreal said regarding materials for the new curriculum there was a delay in all materials for Biology department so again this wasn't unique to Aggrieved. [ROI EU-FY20-013, at p. 13.]

**Refused Key Fob and Equal Access to Facilities in SY2021/2022:**

1. Mr. Rodman worked with Plaintiff from August 2015 through April 2022. [Exhibit SR-1, at 10:3-10.]

2. Mr. Rodman [Assistant Principal] admits that he had been deposed in a previous EEOC and federal lawsuit for discrimination that the Plaintiff. He stated that Plaintiff's lawsuit was the only time he'd ever been deposed and had never testified in any other discrimination cases [Exhibit SR-1, at 7:6-16.]

3. Mr. Rodman stated that Ms. Wolff was responsible for distribution, collection, and accountability of key fobs. (Exhibit 5), [Exhibit SR-1, at 43:17-21.]

4. Ms. Wolff admitted that part of her [Wolff] responsibilities was "Facilities" which included key control, safety, furniture and workorders, among other responsibilities. [Exhibit MW-1, at 12:8-16.]

5. Ms. Wolff recognized the Plaintiff's email requesting keys. [Exhibit MW-1, at 33:2-6.]

6. Ms. Wolff admitted to receiving at least three emails from Plaintiff in one week and refused to reply. [Exhibit MW-1, at 33:7-34:7.]

7. Ms. Wolff claimed that Plaintiff's supervisor should have responded, even though the emails were addressed to her [Wolff]. Witness stated she didn't respond to Plaintiff because, "I'm not your supervisor". [Exhibit MW-1, at 34:11-35:13.]

8. Mr. Rodman admits that he [Rodman] and Ms. Wolff had not responded to Plaintiff's emails to be reissued the key fob. [Exhibit SR-1, at 44:4-14.], (Exhibit 5)

9. Mr. Rodman mentioned that Ms. Smithson, Mr. Valenzuela, and Mr. Gore taught in the virtual school two years ago. [Exhibit SR-1, at 16:23-17:11.]

10. Mr. Rodman acknowledges that Ms. Smithson, Mr. Valenzuela, and Mr. Gore all maintained key fobs and access to the school building in SY2020/2021. [Exhibit SR-1, at 40:2-20.]

11. Mr. Rodman stated that he may have given instruction to not return Plaintiff's key fob for access to the building in SY2021/2022. [Exhibit SR-1, at 38:18-39:7.]

**Refused Government Issued Laptop in SY2021/2022:**

12. Mr. Rodman mentioned that Ms. Smithson, Mr. Valenzuela, and Mr. Gore taught in the virtual school two years ago. [Exhibit SR-1, at 16:23-17:11.]

13. Ms. Moellendick admitted that Plaintiff sent an email asking for permission to maintain her laptop during the summer of 2021 [Exhibit CM-1, at 15:17-21.], [Exhibit 13]

14. Ms. Moellendick admitted that Plaintiff emailed that she would pick up her laptop to start SY 2021/2022 after she [Plaintiff] was refused use of her laptop during the summer. [Exhibit CM-1, at 17:7-18:7.]

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

15. Ms. Moellendick discussed programs such as TOPS, DEERS, ASPEN, and other programs that cannot be accessed from personal computers. A government computer must be used to access these and other programs that are needed to conduct business. Moellendick stated that several DoDEA software cannot be downloaded from our personal computers. [Exhibit CM-1, at 18:8-22:3.]

16. Ms. Moellendick admitted that a substitute had been assigned Plaintiff's government computer at the start of SY 2021/2022, even though Plaintiff stated she would retrieve her laptop. [Exhibit CM-1, at 22:7-17.]

17. Ms. Moellendick admitted that the lock may have been cut from Plaintiff's government assigned computer. [Exhibit CM-1, at 25:10-26:2.]

18. Ms. Moellendick admits that she reported to Mr. Rodman concerning school issues. [Exhibit CM-1, at 26:9-27:5.]

19. Mr. Rodman stated that it may have been him who gave the directive to cut the lock on Plaintiff's government assigned laptop and reassign it to a substitute. He added, "This was a very new experience for us because we had never had teachers that belonged to us that weren't in the building." [Exhibit SR-1, at 35:18-36:6.]

20. However, Mr. Rodman later admitted that during the previous year [SY 2020/2021], Ms. Smithson, Mr. Valenzuela, and Mr. Miles Gore were all in the detailed [outside the building] to the virtual school while attached to Vilseck High School. [Exhibit SR-1, at 16:23-17:6.]

21. Mr. Villarreal stated that when he was Plaintiff's supervisor and she was detailed to the virtual school in SY 2020/2021, the school was responsible for providing Plaintiff with a government issued laptop for work. [Exhibit MV-1, at 11:18-24.]

**Removed from Faculty Email Distribution List in SY2021/2022:**

1.  Ms. Moellendick admits that she removed Plaintiff's name from the school-wide distribution list. Witness took blame for the removal of Plaintiff's name. [Exhibit CM-1, at 27:6-9.]

2.  Ms. Moellendick knew Plaintiff had not received mass emails/correspondence since the start of the schoolyear. [Exhibit CM-1, at 28:19-22.]

3.  Ms. Moellendick claimed to have emailed her supervisors about the "error" that she had made in removing Plaintiff's name. [Moellendick] could not locate the email at the time of deposition. Defense attorney stated that she [defense attorney] would get that email to ProSe Plaintiff Smithson. [Exhibit CM-1, at 28:22-29:14.] The email was never produced by defense for discovery.

4.  Witness [Moellendick] admitted that neither teacher [Smithson, Gore, or Valenzuela] were removed from the distribution list in the previous schoolyear [Exhibit CM-1, at 30:20-32:10.]

5.  Witness [Moellendick] admitted that it was shared with teachers that people with medical issues would have priority when assigned to the virtual school. [Exhibit CM-1, at 32:11-33:5.]

22. Moellendick admitted that the school was supposed to support Plaintiff and other colleagues [Mr. Gore and Mr. Valenzuela] while they worked in the virtual school in schoolyear 2020/2021. Witness also admitted that Plaintiff was the only teacher assigned to work at the virtual school during the next year [2021/2022] when her name was removed from the email distribution list. [Exhibit CM-1, at 30:20-31:4.]

23. Mr. Villarreal stated that the Plaintiff was to remain on the faculty distribution email while detailed to the virtual school SY 2020/2021. [Exhibit MV-1, at 11:20-24.]

24. Mr. Rodman admitted that during the previous year [SY 2020/2021], Ms. Smithson, Mr. Valenzuela, and Mr. Miles Gore all remained on the email distribution list. Rodman stated,

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

"Yes, but during that time, you were on our staffing document". [Exhibit SR-1, at 46:25-47:7.]

25. Mr. Rodman acknowledged Plaintiff emailed in September 2021, stating that she had been removed from the email distribution list, denied access to the building, and denied technology needed to conduct her duties as a teacher. (Exhibit 5), [Exhibit SR-1, at 32:9-15.]

26. Mr. Rodman claimed that he [Rodman] and Dr. Jones made decisions within the school while Dr. Jones was still in Japan. [Exhibit SR-1, at 32:20-33:14.]

27. When presented with the dilemma of Plaintiff not receiving important information about COVID measures through the email distribution, Mr. Rodman stated "I would think that you [Plaintiff] would get them from the virtual school". [Exhibit SR-1, at 49:9-22.]

28. Mr. Rodman claimed that the European district sends the emails to "all staff in Europe", so there was no need for Plaintiff to remain on the Vilseck High School email distribution. He stated that the Plaintiff would get those emails from the European District Headquarters. [Exhibit SR-1, at 49:23-50:3.]

29. When asked about COVID-19 measures specific to Germany that Ms. Smithson [Plaintiff] would not receive, Mr. Rodman stated "I guess you're [Plaintiff] not getting it". [Exhibit SR-1, at 50:6-51:1.]

C. **CLAIM F: Accosting/Questioning Plaintiff's Minor Daughter** Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17

19. When questioned during the EEOC process Wolff admitted that she may have asked Plaintiff's minor daughter how Plaintiff was doing. [ROI EU-FY20-013, at p. 65.]

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

20. During a more recent deposition, Wolff claimed to not know who Plaintiff's daughter was. [Exhibit MW-1, at 14:17-18.]

21. Wolff denied seeing and speaking with Plaintiff about approaching her [Plaintiff's] daughter. However, later admitted that she told Plaintiff's daughter "Hi…tell your mom hi". Therefore, contrary to witnesses answer to deposition, she [Ms. Wolff] does know who Plaintiff's daughter is when she [Ms. Wolff] sees her. [Exhibit MW-1, at 14:15-5.]

22. Wolff denied asking daughter what business Plaintiff was taking care of over summer. [Exhibit MW-1, at 15:19-22.]

**D. CLAIM B, J(b), and J(e)**: **Unwanted Touching** Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17

**Unwanted Touching by Supervisor**

1. Mr. Rodman was Plaintiff's assistant principal from August 2015 through April 2022. [Exhibit SR-1, at 10:3-10.]

2. Mr. Rodman testified Complainant advised him that she has a medical condition that makes it difficult for her to work in the morning or medication she takes for a medical condition makes it difficult for her to work in the morning. [ROI EU-FY18-054, at p. 6.]

3. Mr. Rodman acknowledges an email that he sent to Plaintiff apologizing for causing Plaintiff discomfort. (Exhibit 4), [Exhibit SR-1, at 29:12-30:15.]

4. Mr. Rodman denies that he was attempting to disconnect Plaintiff's concerns from his [Rodman] apology when he created a separate email apologizing instead of replying to the Plaintiff's original email. [Exhibit SR-1, at 30:18-32:2.]

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

5.  Mr. Rodman [Assistant Principal] admits that he had been deposed in a previous EEOC and federal lawsuit filed by Plaintiff. He stated that Plaintiff's lawsuit was the only time he'd ever been deposed. Rodman also had never been compelled to testify in any other discrimination cases [Exhibit SR-1, at 7:6-16.]

6.  Mr. Rodman claims he doesn't recall Plaintiff's previous complaints against him in that prior EEOC. Rodman recalls Plaintiff's complaints against Ms. Wolff for violating her [Plaintiff] personal space. [Exhibit SR-1, at 28:3-29:8.]

23. However, [ROI EU-FY18-054, at p. 6.], demonstrates that Rodman was questioned if he had ever harassed Smithson.

24. In [ROI EU-FY18-054, at p. 15.], Plaintiff complained about Rodman in her space and standing over her purse when she reentered her classroom after using the restroom.

7.  Mr. Rodman [Supervisor] stated that he did not know DoDEA's policy on workplace harassment stating, "Not verbatim, but I know we shouldn't do that…people need to feel safe in their work environment. I can't state verbatim, but I think I summed it up".  [Exhibit SR-1, at 53:3-17.]

8.  Mr. Rodman describes how he greeted the Plaintiff as she entered the building. Mr. Rodman has a brief discussion with Plaintiff about her [Plaintiff's] husband. Mr. Rodman only admits to pointing at Plaintiff's sleeve, as opposed to touching Plaintiff's lower arm and wrist, as stated in Plaintiff's complaint. Rodman claimed that Ms. Rincon stated "Well, that was nice.", in reference to his "compliment" about Plaintiff's attire. [Exhibit SR-1, at 22:6-23:13.]

9.  Mr. Rodman admits that Plaintiff did not ask him to touch her. He admits that Plaintiff has never appeared to be a touchy, feely, hugging type of individual with him. [Exhibit SR-1, at 26:16-25.]

10. Mr. Rodman claims that "It was not my intent to do that. I was pointing at the fabric on your sleeve as I was kind of walking past you and going back to my office. I don't recall making contact with you". [Exhibit SR-1, at 27:1-11.]

11. Dr. Jones explains that she acted immediately [took to action] when Plaintiff sent an email describing how Mr. Shawn Rodman touched [unwanted] the Plaintiff. Dr. Jones stated that Plaintiff's email was appropriate. [Exhibit MJ-1, at 30:1-8.]

12. Dr. Jones explains how she consulted with LMER and the legal department concerning Plaintiff's complaint of an unwelcomed touch from Plaintiff's 2nd level supervisor. (Exhibit J2), [Exhibit MJ-1, at 30:16-21.]

13. Dr. Jones admitted that she needed to have a conversation with Mr. Rodman as part of a pre-action investigation. [Exhibit MJ-1, at 30:25-31:5.]

14. Dr. Jones stated that Mr. Rodman claimed to not realize he had violated Plaintiff's personal space, and that he thought he was being friendly. [Exhibit MJ-1, at 31:6-9.]

15. Mr. Rodman emailed Plaintiff an apology following his "conversation" with Dr. Jones. (Exhibit R1)

16. Dr. Jones stated that she did not accept Mr. Rodman's reasoning concerning Plaintiff's complaint of unwanted touching. She stated that there should have been no touching or placing anyone in an uncomfortable situation. [Exhibit MJ-1, at 32:13-18.]

17. Mr. Rodman received a reassignment in late March or Early April. [Exhibit SR-1, at 11:9-21.], [Exhibit MJ-1, at 31:10-17.]

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

**Unwanted Touching by School Administrative Officer**

6.  Mr. Villareal was Plaintiff's principal at Vilseck High School for five years. [Exhibit MV-1, at 9:25-10:9.]

7.  Mr. Villarreal admits that he has been deposed in the past for federal lawsuit and EEOC complaint filed by the Plaintiff prior to the current claims in this case. "... this is the only time where it's gone to this level of deposition. There's one other EEO case that I've had in my eleven years as an administrator, but it didn't go to the deposition." [Exhibit MV-1, at 7:7-8:3.]

8.  Mr. Villarreal identifies as Caucasian. [Exhibit MV-1, at 14:7-13.]

9.  Mr. Villarreal is currently principal at Sigonella Middle/High School in Italy. [Exhibit MV-1, at 14:14-18.]

10. Mr. Villareal described his responsibilities as "Anything that involves the positive functioning of the school". He went on to state responsibilities such as the supervision of teachers, supervision of children, logistics, supply. [Exhibit MV-1, at 14:23-15:7.]

11. Mr. Villarreal explains that he has taken appropriate action against a teacher accused of touching [non-sexual] a student. Mr. Villarreal describes how he contacted LMER (Labor Management Employee Relations) and gave counsel to the teacher, causing the behavior to change in the teacher. "There was resolution to the situation", as described by Mr. Villarreal. [Exhibit MV-1, at 15:22-16:9.]

12. Mr. Villarreal states that Michele Wolff was the administrative officer while he was principal at Vilseck High School. [Exhibit MV-1, at 34:9-16.]

13. Mr. Villareal somewhat recalled Plaintiff's complaint about Ms. Wolff interrupting her class and walking behind her desk. [Exhibit MV-1, at 41:12-19.]

14. Mr. Villarreal stated that it would be inappropriate for Ms. Wolff to walk into Plaintiff's personal space "if she had done it twice". However, he stated that it wouldn't warrant a call to Labor Management. [Exhibit MV-1, at 42:5-15.]

15. However, Villarreal admitted to contacting Labor Management when a teacher touched a student. [Exhibit MV-1, at 15:22-16:9.]

16. Mr. Villarreal was reluctant to say if it was inappropriate for Ms. Wolff to place her hip on my shoulder. However, he admitted about himself, "I would be uncomfortable if someone was doing that to me". [Exhibit MV-1, at 42:16-22.]

17. Mr. Villarreal went on to claim that people have different boundaries; "I don't know if it was any ill meaning on her [Wolff] part".  He stated that he didn't know if Ms. Wolff did it to make me uncomfortable. Villarreal stated that he would say something if a person was making physical contact with him. [Exhibit MV-1, at 42:22-43:12.]

18. Again, Mr. Villarreal was reluctant to say that Ms. Wolff's physical contact [patting my shoulder] was inappropriate because making that statement could be actionable against a person in his line of work. [Exhibit MV-1, at 43:13-20.]

19. Ms. Wolff denied ever seeing a sign stating that no one should walk behind Plaintiff's desk, even though the sign was in plain view. Ms. Wolff also denied that Plaintiff verbally requested that she not walk behind her desk. Ms. Wolff denied that Plaintiff instructed her not to interrupt her class while during instruction. Stated that administration instructed her not to interrupt after the incident had already taken place. [Exhibit MW-1, at 23:8-10.]

**Unwanted Touching by Headquarters Instructional Systems Specialist (ISS)**

20. Ms. Schiele denied that that she hugged the Plaintiff during another training [CCRS] in 2020, and instead stated that she came up behind the Plaintiff and placed her hand on her shoulder. The witness stated that the Plaintiff did not give her [Schiele] permission to touch her [Plaintiff]. [Exhibit JS-1, at 14:11-16.]

21. Ms. Schiele admitted that she was aware that Plaintiff filed an EEOC complaint against her in 2018. Witness stated that she became aware in August 2018 when she received a questionnaire concerning the complaint. [Exhibit JS-1, at 13:4-7.]

22. Ms. Schiele admitted that she was aware of the complaint that Plaintiff filed with the German police in 2018. She stated that she became aware when she received notice [letter] from the German police in early February that there was a complaint filed against her by the Plaintiff for bodily injury. Witness added that the German police dismissed the charge on March 19, 2019. [Exhibit JS-1, at 13:8-20.].

23. Ms. Schiele admitted to knowing the circumstances that the complaint of bodily injury was filed by Plaintiff. Witness remembered the exact training date of the incident, stating "It was Friday, February 13th, 2018", at the Catapult Training for teachers.  [Exhibit JS-1, at 13:21-14:11.]

24. When asked why she [witness] would violate Plaintiff's personal space after Plaintiff had other complaints against her in the past, Ms. Schiele stated that she thought she was helping the Plaintiff. [Exhibit JS-1, at 15:10-19.]

25. Ms. Schiele denied that she was attempting to provoke Plaintiff by violating Plaintiff's personal space and touching her against her will. [Exhibit JS-1, at 15:20-25.]

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

26. Ms. Schiele admitted that Plaintiff requested to speak with her in the presence of Mr. Villarreal [Supervisor], where she apologized for the incident of unwanted touching. [Exhibit JS-1, at 16:1-10.]

27. When asked if Ms. Schiele thought that unwanted touching was appropriate in the workplace, she stated, "I did not know that it was unwanted". [Exhibit JS-1, at 16:11-17:2.]

28. Ms. Schiele claimed to not know that she and Plaintiff had an unfavorable relationship before touching her. When reminded that Plaintiff had filed previous complaints against her [witness], she claimed that she was trying to support Plaintiff as the ISS [Instructional Systems Specialist]. [Exhibit JS-1, at 17:2-8.]

29. Ms. Schiele stated that she had never been counseled by any supervisor about inappropriately touching the Plaintiff. She [witness] admitted that she had never been counseled concerning any of the previous complaints that Plaintiff had made against her [Schiele] for violating Plaintiff's personal space and assault. [Exhibit JS-1, at 17:17-18:7.]

30. Superintendent Melissa Hayes stated in deposition that she was never made aware of any issues that Plaintiff had complained about while she [Hayes] was located in the building. [Exhibit MH-1, at 23:10-12.]

### E. **Plaintiff's Additional Allegation in the Second Amended Complaint**:

The Defendant states, "Plaintiff also raises a number of additional allegations in her Second Amended Complaint that were not included as claims in her EEO complaint. Complaint adding a *new round of incidents* that were not included in the EEO Complaint that forms the basis of this action. But Plaintiff is not entitled to bring these new claims because she failed to exhaust administrative remedies."

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

However, as stated in *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) "Because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Taylor v. Western Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992).

The test for determining whether an EEOC charge encompasses the claims in a complaint therefore grants the Title VII plaintiff significant leeway: all Title VII claims set forth in a complaint are cognizable that are "`like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc) (quoting *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971)), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). Smithson's amended complaint satisfies this standard because the "new" claims were "like" and arose from the incidents in the original complaint.

### III. SUMMARY JUDGEMENT LEGAL STANDARD

Summary judgment is appropriate only when there are no disputed genuine issues of material fact. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, the court cannot make "credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* On summary judgment, all facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Parker v. Four Seasons Hotels, LTD*, 845 F.3d 807, 814 (7th Cir. 2017). "[T]he admissible evidence presented by the nonmoving party must be believed." *Baig vs.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Indiana Dept. of Transportation*, 2017 WL 1165525 *1 (March 29, 2017) (citing *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009). Summary judgment is appropriate "only when no reasonable jury could have found for the plaintiffs." *Johnson v. Advocate Health and Hosp. Corp.*, 892 F. 3d 887, 894 (7th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).

## IV. ARGUMENT

### A. The Court Should Deny Defendant's Request for Summary Judgment Concerning Amended Complaint

The test of *Jenkins* is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. The second part of the test is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation. *Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)* However, in the case of Smithson, the EEOC had already dismissed her claims before she amended her complaint. The incidents surrounding the amended claims took place directly after the original claims were dismissed by the EEOC. At that point, her colleagues continued harassing the Plaintiff. Although the Defendant attempted to separate these claims in its brief so that it would be difficult to make a connection; Plaintiff is successful in showing that the claims set forth in the amended complaint are "like or reasonably related to the allegations of the charge and growing out of such allegations."

The Plaintiff complained of her colleagues violating her personal space in the original complaint. When these actions of her colleagues continued to take place, Plaintiff amended her complaint, which included the continued violation of her personal space and unwanted touch by her colleagues, to include her assistant principal. The Plaintiff also amended her complaint to include being denied multiple items needed to perform her duties as a teacher in the classroom. Although now working in the virtual classroom, Plaintiff's incoming principal; Dr. Michelle Jones stated in deposition that the high school was responsible for supporting the Plaintiff while she worked in the virtual school the same as if she was working in the brick-and-mortar.

Furthermore, Plaintiff names some of the same individuals in her amended complaint that she named in the original complaint and previous lawsuit. Mr. Shawn Rodman had been questioned in the previous EEOC for violating the Plaintiff's personal space. [ROI EU-FY18-054, at p. 6.] Plaintiff filed a German police report for assault by Ms. Joy Schiele [Exhibit JS-1, at 13:4-7.], [Exhibit JS-1, at 13:8-20.], [Exhibit JS-1, at 13:21-14:11.], and an EEOC naming the headquarters personnel [ISS] as the person who assaulted [hit leg with desk] her during a training. After no action was taken against the Instructional Science Specialist, she assaulted [forcefully hugged/unwanted touch] Plaintiff during another training. Although, Schiele only admitted to "walking behind Plaintiff and patting her on the shoulder". [Exhibit JS-1, at 14:11-16.]

Ms. Michelle Wolff was named for refusing to provide Plaintiff with the Hydroponic system in the original complaint. Wolff refused to assign Plaintiff key access to the building in the amended complaint, along with other colleagues denying Plaintiff her

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

government assigned laptop and removing Plaintiff from the email distribution list, whereby, denying Plaintiff equal access to the workplace compared to her colleagues.

Defendant states, *"given that several of the new claims occurred after the EEO issued its Final Agency Decision on May 11, 2021, it would have been impossible for the EEO office to have been on notice of Plaintiff's claims (because they hadn't happened yet)."*. However, Plaintiff demonstrated that the EEO office was already on notice of the claims included in her Second Amended Complaint because they arose out of the same conduct and involved some of the same individuals. Smithson exhausted administrative remedies in her original complaint. Therefore, the court should deny Defendant's motion for summary judgement on these exhausted claims.

**B. The Conduct Experienced by Plaintiff Constitutes Harassment and Intimidation**

Plaintiff's harassment claim succeeds as a matter of law. To survive summary judgment, Plaintiff must provide evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

**i. The Conduct Objectively Offensive and Sufficiently Severe or Pervasive**

In determining whether challenged conduct rose to an actionable level, courts consider the severity of the conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (citation omitted). As

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

the Supreme Court has recognized, Title VII does not impose a "general civility code" and "simple teasing" is insufficient to state a harassment claim. *Faragher*, 524 U.S. at 788 (citations omitted). Thus, harassment plaintiffs face a "high bar" because "employers generally do not face liability for off- color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018). Indeed, the Seventh Circuit has established "a safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of [a protected characteristic.]" *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998) (internal quotation and citation omitted).

The offenses against the Plaintiff in this case cannot be viewed as "simple teasing" or "isolated" because her coworkers deliberately continued to disrupt her instruction after being asked to discontinue. When Plaintiff's supervisor [Villarreal] realized that these actions were being conducted by several different individuals after his claims of "speaking with" some violators, he should have taken greater precautions, especially given Plaintiff's reasonable accommodations for high distractibility and other neurological conditions.  Plaintiff's supervisor again, aware of her documented disabilities and reasonable accommodations should have taken more action to create a safe workplace by reprimanding individuals that violated Plaintiff's physical space, especially in cases when Plaintiff filed claims with the military police, German police, and her Congresswoman. When Plaintiff's colleagues were improperly counseled, they continued to harass her in a variety of ways in the workplace to prevent her from performing her job. Because her colleagues had already become accustomed to violating Plaintiff on a constant

basis, this harassment continued after Mr. Villarreal was reassigned to a different location as principal.

Plaintiff made several requests and demands for her personal space to not be violated over years, however, her colleagues and one supervisor continued to violate Plaintiff's personal space and touch [unwanted] her in different ways. Plaintiff did not want a person she previously filed complaints against to touch her in any way. Furthermore, the nature of the job [teacher training and instruction] did not warrant touching. Plaintiff requesting to not be touched is enough to consider these actions hostile when they continued to take place. To add insult to injury, Plaintiff's colleagues performed humiliating acts such as standing with their hip on Plaintiff's shoulder, hugging Plaintiff, and "patting Plaintiff on the shoulder or back" as if she is a pet of some sort. Ms. Schiele denied that that she hugged the Plaintiff during another training [CCRS] in 2020, and instead stated that she came up behind the Plaintiff and placed her hand on her shoulder. The witness stated that the Plaintiff did not give her [Schiele] permission to touch her [Plaintiff]. (Joy Schiele 2022-09-02 07:17:54 – 07:18:10) Her supervisor, Mr. Rodman decided that he would touch plaintiff and state that he was being nice or friendly. Both, Mr. Rodman, and Ms. Schiele had previously been questioned in the EEO process about violating Plaintiff's personal space. By continuing to touch Plaintiff, Mr. Rodman, and Ms. Schiele disregarded the Plaintiff's requests and the EEOC previously filed against them.

Plaintiff has a diagnosis of anxiety and other neurological conditions that was discovered by her colleagues after the breach of her reasonable accommodations and medical history. Colleagues and administrators passed the baton as they took turns interrupting Plaintiff while she worked, touching Plaintiff against her wishes, and denying Plaintiff's access to the

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

workplace in a variety of ways described in this lawsuit. Plaintiff's work environment was abusive because her colleagues deliberately affected her physical and mental state by assaults of varying degrees, disrupting Plaintiff's instruction on a constant basis, denying her needed workplace items to cause undue stress and anxiety while she worked. These acts continued even after Plaintiff requested them to stop multiple times and after Plaintiff began working with the DoDEA Virtual School as a reasonable accommodation for her disabilities. Even after this point, Witness deposition demonstrates that Plaintiff's supervisor violated her personal space when she [Plaintiff] was required to report to the building for COVID19 testing in January 2022 as she worked in the Virtual School. Depositions also prove that Plaintiff's colleagues blatantly denied her access to the work environment even more once her white, male colleagues were returned to the brick-and-mortar.

The conduct that Plaintiff experienced was objectively offensive and sufficiently severe or pervasive as to create an abusive working environment. *Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001). To be actionable under Title VII, the challenged conduct "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). Importantly, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation and citation omitted). Plaintiff's former supervisor [Villarreal] admitted about himself, "I would be uncomfortable if someone was doing that to me". [Exhibit MV-1, at 42:16-25.]. Villarreal stated that he would say something if a person was making physical contact with him.

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

[Exhibit MV-1, at 43:1-12.]. Dr. Jones stated that she did not accept Mr. Rodman's reasoning concerning Plaintiff's complaint of unwanted touching. She stated that there should have been no touching or placing anyone in an uncomfortable situation. [Exhibit MJ-1, at 32:13-18.]**.** By Plaintiff's current [Jones] and former [Villarreal] supervisor's words, this conduct was objectively and subjectively offensive.

### ii. The Conduct Was Based on a More Than One Protected Characteristic

Smithson was prematurely returned to the brick-and-mortar in mid-January 2021. Her two white, male colleagues remained in the Virtual School. Smithson filed an appeal and was returned to the Virtual School in late January 2021. She should never have been returned to the brick-and-mortar because of the severity if her medical status as documented by her neurologist. For medical reasons, Smithson remained in the Virtual School at the start of schoolyear 2021/2022. Her white, male coworkers were returned to the brick-and-mortar at the start of SY 2021/2022.

By the witness's own depositions, they have admitted to denying access to the workplace to support Plaintiff while working in the Virtual School as a reasonable accommodation for her disabilities. On several occasions, it was admitted that Smithson was supported when she was assigned to the Virtual School along with the two white, male employees. However, the support ceased for Smithson once the two colleagues were returned to the brick-and-mortar. Her supervisor, Mr. Rodman claimed to be unaware that he needed to continue supporting Smithson. Ms. Wolff refused to answer Smithson's requests for building access. Ms. Moellendick admitted to removing Smithson from the faculty distribution email list,

as well as reassigning her government issued computer to a substitute. Smithson had a right to all while she was still working at the Virtual School due to her medical issues.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee because of the employee's race, color, religion, sex, or national origin.1 In addition, Title VII prohibits employers from retaliating against employees who have protested an unlawful employment practice under Title VII.2 Title VII's antiretaliation provision, section 704(a) of the Civil Rights Act of 1964, explicitly protects "employees" and "applicants for employment" from retaliation by their employers. Smithson was discriminated [intersectional] against based on being an American woman of African descent who needed a reasonable accommodation in the virtual school. While she was assigned to the virtual school with her white, male colleagues, Plaintiff and her two colleagues were provided with the support required of their "home" school [Vilseck High School]. However, Smithson was being treated as a "rider" because once her two colleagues were returned to the brick-and-mortar, Plaintiff was refused the same level of support by colleagues and her assistant principal [Rodman] because she was successful when she advocated for herself to remain in the virtual school as a reasonable accommodation.

### iii. There Is Basis for Employer Liability

After several of Plaintiff's colleagues began to interrupt her instruction, Villarreal should have taken more action so that these disruptions discontinued, especially when they had increased in occurrence after Plaintiff's complaints. Also, Plaintiff should not be subjected to every single coworker being given an opportunity to violate her personal space at least one time. Villarreal stated, "It would be inappropriate for Ms. Wolff to walk into Plaintiff's personal space if she had done it twice. It wouldn't warrant a call to Labor Management." [Exhibit MV-1, at

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 26

42:5-15.] (*See Hall*, 713 F. 3d 325, 335-336 (7th Cir. 2013) ("vicarious liability can be found where a jury can conclude that the employer was alerted to the hostility and tardily responded only after the final complaint.)

Plaintiff's supervisor did not take proper actions to assure that the disruptions cease. He continued to make excuses for Plaintiff's colleagues and state that they needed second chances. Villarreal stated that he spoke with the faculty and staff on several occasions to minimize interruptions to during instruction, however, could not provide one piece of evidence to show that this ever took place. [Exhibit MV-1, at 26:2-24.] However, Plaintiff has proven through depositions, witness statements, and other documentation in the case record that her colleagues continued to abuse her from at least SY 2017 through SY 2022 because her supervisor took little action to stop this from happening.  Mr. Villarreal admits that he has never given a letter of reprimand to insubordinates. [Exhibit MV-1, at 22:17-23:1.] Mr. Villarreal did not want to quote DoDEA guidance on workplace harassment. He stated that he doesn't have it memorized. [Exhibit MV-1, at 55:10-25.] Furthermore, Mr. Rodman, Plaintiff's other supervisor participated in the abuse and harassment by denying Plaintiff equal access to the workplace and violating her personal space [unwanted touching]. Dr. Jones stated that she did not accept Mr. Rodman's reasoning concerning Plaintiff's complaint of unwanted touching. She stated that there should have been no touching or placing anyone in an uncomfortable situation. [Exhibit MJ-1, at 32:13-18.]

Ms. Hayes explained DoDEA's guidance on workplace harassment in detail. [Exhibit MW-1, at 23:18-24:11.], however, the superintendent was never given an opportunity to act because she was never informed by Plaintiff's direct supervisors. Villarreal reported no

incidents concerning Plaintiff to his direct supervisor, Ms. Hayes [Community Superintendent]. [Exhibit MW-1, at 14:15-5.], [Exhibit MW-1, at 19:5-12.]. He was more concerned about violations being "actionable" against Plaintiff's colleagues than he is concerned about Plaintiff's safety in the workplace. [Exhibit MV-1, at 43:13-20.]

*CONCLUSION*

For the foregoing reasons, Pro Se Plaintiff Smithson, respectfully requests that the Defense's motion for summary judgment be fully denied. Smithson has presented sufficient evidence that unlawful discrimination occurred against her because she is an African American, disabled woman advocating for her reasonable accommodations through the EEOC and civil court proceedings. These matters must go to a jury for adjudication.

Respectfully submitted,



*Tamica J. Smithson*

*CMR 411; Box 3668*

*APO, AE 09112*

*317-683-6620 stateside*

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28

*+49 162 952 0420 Germany*

## **CERTIFICATE OF SERVICE**

Due to problems with technology and delayed paid professional printing arranged on Friday, November 18, 2022, I hereby certify that the foregoing documents will be mailed by first class U.S. mail within one week (7-days) to the following:

Lloyd J. Austin III

United States Secretary Department of Defense

1000 Defense Pentagon Washington, DC 20301-1000

DocuSigned by:

*Tamica Smithson*

7311DB6CA3FB4CD...

Tamica J. Smithson

Pro Se Plaintiff

CMR 411: BOX 3668

APO, AE 09112

## **CERTIFICATE OF SERVICE**

Due to problems with technology and delayed paid professional printing arranged on Friday, November 18, 2022, I hereby certify that the foregoing documents will be mailed by first class U.S. mail within one week (7-days) to the following:

Office of General Counsel

1   U.S. Department of Justice Pennsylvania Ave

2   NW Washington, DC 20530-0001

3

4

5                                                                         DocuSigned by:

                                                                          Tamica Smithson
6                                                                         7311DB6CA3FB4CD...

7                                                                         Tamica J. Smithson

8                                                                         Pro Se Plaintiff

9                                                                         CMR 411: BOX 3668

10                                                                        APO, AE 09112

11

12

13

14                          **<u>CERTIFICATE OF SERVICE</u>**

15   Due to problems with technology and delayed paid professional printing arranged on Friday,
     November 18, 2022, I hereby certify that the foregoing documents will be mailed by first class
16   U.S. mail within one week (7-days) to the following:

17

18   U.S. Attorney; Southern District of Indiana

19   Re: Complaint Against U.S. Department of Defense

20   10 W Market Street, Suite 2100 Indianapolis, IN 46204-3048

21

22

23                                                                        DocuSigned by:

                                                                          Tamica Smithson
24                                                                        7311DB6CA3FB4CD...

25                                                                        Tamica J. Smithson

26                                                                        Pro Se Plaintiff

27                                                                        CMR 411: BOX 3668

28

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

APO, AE 09112