Smithson, EU-FY20-013

SMITHSON EXHIBIT 1

11/16/2022

**Declaration under Penalty of Perjury**

I, <u>Marc Villarreal</u>, in accordance with 28 U.S.C. §1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.*

Question (Q): What is your full name?
Response (R): Marc Villarreal

Q: What is your current position title, pay grade, and series?
R: Principal, Vilseck High School, $132,000 annual salary, TP-KE-STEP 10

Q: How long have you held this position [provide to and from dates]?
R: 01AUG2016 - Present

Q: Who was your first, second-level supervisor during the period at issue [March 2019 through September 2019]?
R: Melissa Hayes

Q: What is your organizational relationship to Ms. Smithson (1st, 2nd, 3rd level supervisor, co-worker, servicing HR personnel, friend)?
R: 1st level supervisor

Q: If you served as her 1st, 2nd, or 3rd level supervisor, please provide the timeframes that you supervised the Complainant.
R: 01AUG2016 - Present

Page 1 of 10 Pages
Declarant's Initials _____

000180

**Bases for Discrimination**
Q: What is your race?
R: Hispanic

Q: What is Ms. Smithson's race?
R: African-American

Q: Would you agree that you are aware of her race based on visual observation (yes or no)? If no, please explain how you know his race
R: Yes.

Q: What is your sex (male or female)?
R: Male.

Q: What is Ms. Smithson's sex [male or female]?
R: Female.

Q: Would you agree that you are aware of her sex based on visual observation (yes or no)? If no, please explain how you know her sex
R: I have heard her refer to herself as a mother, and seen her identify herself as Ms. Smithson in correspondence.

Q: What is your year of birth?
R: 1973

Q: What is Ms. Smithson's approximate age?
R: Over 40.

Q: How are you aware of Ms. Smithson's age? Have the two of you discussed her age, from personnel records as examples, please explain how you know her age.
R: I do not know her exact age. I have had a conversation with her when we realized that we were in Okinawa in the same timeframe, over 20 years ago, so I would guess that she is over 40.

Q: What is your awareness of Ms. Smithson medical conditions [be specific-what conditions does the Complainant have]?
R: In Ms. Smithson's original reasonable accommodations request she noted the following: migraines, dizziness, nausea in the morning hours, anxiety and hypertension. She has also informed me that she has ADD.

Q: When did you find out about the medical conditions?
R: I do not recall the exact date, but it was during SY2016-2017.

Q: How did you find out about the medical conditions (did she tell you, provide medical documentation, did you find out from someone else)?
R: I reviewed her reasonable accommodation plan during my first year as principal of Vilseck

Page 2 of 10 Pages
Declarant's Initials _____

000181

Smithson, EU-FY20-013

HS.

Q: Did she provide you with any medical documentation to support her conditions? If so, approximately when and what did she give you?
R: The original reasonable accommodation request had medical documentation to support her conditions.

Q: What are the essential duties of her position?
R: Based upon knowledge of subject matter, associated skills, and experience in teaching the grade level(s) and/or specialization assigned, the Teacher plans, develops, and organizes long-range lesson plans and daily class work to ensure in-depth learning within the timeframe allotted to meet the course/curriculum content standards. Using teaching principles and best practices and standards-based instruction, the Teacher instructs assigned subject(s) and grade level(s) in a classroom or lab setting.

Selects, adapts, or modifies teaching methods or materials that experience indicates will be most effective in teaching the assigned grade level(s) and subject matter; possesses a repertoire of strategies to accommodate the differentiated needs of learners; improves the quality of instruction based on subject matter taught; may encourage students to develop skills in research, making maximum use of available/approved education resources. Maintains awareness of student progress through using formative and summative assessment results that inform practice; establishes classroom routines consistent with a healthy learning environment; communicates clear expectations for student success and behavior; integrates approved technology into instruction; respects diversity; collaborates with special education educators to meet the individualized learning requirements of each identified student; and maintains individual and class records using the school information system as appropriate.

Supports, counsels, and motivates students to meet or exceed grade-level standards; draws on personal knowledge of the individual student's personality, background, and interests when discussing learning issues, achievements, conduct in class, or any issues for which the student may seek the Teacher's advice; encourages students to become involved in extracurricular activities as appropriate; refers serious and/or chronic behavior problems to the guidance counselor and/or principal in accordance with local policy and procedure; collaborates with other teachers, parents or guardians on matters impacting student learning.

Adheres to and, when applicable, implements safety and security procedures; contributes to creating a school climate conducive to learning, achievement, and citizenship; participates in professional development opportunities, as appropriate; participates in committee activities, as required to review, evaluate, and develop educational materials to improve the educational program; participates in DoDEA system-wide assessment programs, as required; informs school administration of education deficiencies, critical issues, and emergencies; may be required to supervise students in such venues as outside activities, lunchroom, and bus arrivals and departures, and may be assigned to serve as a sponsor, coach, or consultant of an extracurricular activity.

Performs other duties as assigned.

Page 3 of 10 Pages
Declarant's Initials ___

000182

Q: What is your understanding regarding how these medical conditions affect her ability to perform her duties as a Science Teacher, TC-CE 15?
R: Many of the above duties cannot be performed if not in the building. Ms. Smithson has notified me if she is unable to perform her duties and a substitute teacher has been used to cover her classes.

Q: Is Complainant able to perform the essential duties of her position with our without accommodation?
R: The complainant has notified me when she has not been able to perform her essential duties, and we have utilized her current accommodation plan.

Q: Besides this EEO Complaint, are you aware any other EEO Complaint filed by Ms. Smithson?
R: On August 10, 2017 I received notification of an informal complaint. Since then she has added to her EEO complaint.

Q: Did you participate in Complainant's prior EEO complaint? If so, please explain your role [e.g. responsible management witness, general witness].
R: I have responded to all previous requests for responses.

Q: When and how did you find out about Complainant's previous complaint?
R: The first complaint was brought to my attention on August 10, 2017

Q: When (approximate) did you find out about this current complaint?
R: The most recent notification came from Ms. Williams on 18APR2020.

Q: How (who told you) did you find out about this current complaint?
R: Investigator Williams notified me on 18APR2020.

Q: When (approximate) did you find out about this current complaint?
R: 20APR2020.

Q: How (who told you) did you find out about this current complaint?
R: I received an e-mail from Ms. Williams.

**Incidents of Discrimination and Harassment – Please refer to Agency's Notice of Acceptance dated December 16, 2019**

*Claim #1a*
Q: Ms. Smithson states twice in September 2019, Ms. Franklin and Ms. Natanaun [substitute for SPED] walked into her classroom while she was teaching to disrupt her class. What is your knowledge of this incident? Is this a true statement? IF not, what happened?
R: The statement is untrue. I investigated the claim. I could not find evidence to support that anyone walked into her classroom with the intent to disrupt her class. Ms. Smithson has had colleagues interrupt her while instructing. We make every effort to keep that to a minimum, but

I can never guarantee a work environment free from interruptions. Ms. Franklin, her supervisor and I worked out a protocol for requesting students that was less intrusive to teachers. Ms. Franklin came to me in tears following her interaction with Ms. Smithson. She was apologetic. On September 30th Ms. Smithson wrote me about disruptions to her class. Her e-mail stated, I have had to speak with Ms. Villanueva, Mr. Johnson and one or two others about interrupting my classes." Ms. Franklin came to me following an interaction with Ms. Smithson. She was in tears. Ms. Natanaun is a substitute teacher who was filling in for a special education aide in September. Until this statement, I did not have a name of a substitute who interrupted her. Special education aides do occasionally have to pull students from a class.

Q: Ms. Smithson states Mr. Johnson also interrupted her class twice, to disrupt her class. What is your knowledge of this incident? Is this a true statement? IF not, what happened?
R: This is not a true statement. Mr. Johnson did not walk into her class to disrupt her class. Mr. Johnson works for IT. He responds to service desk request tickets in the order received. He covers two schools and does not have good knowledge of our bell schedule. Most teachers who put in a service desk request are happy to have service regardless of the time. After she notified me of the interruptions, I wrote Ms. Smithson and let her know I could ask Mr. Johnson to hold off on IT repairs until she is not teaching. I spoke with Mr. Johnson about being as careful as he can about interrupting instruction when possible.

Q: Ms. Smithson states she believes they were walking into her classroom to cause a distraction while she was teaching and to cause her to have a negative response. What is your response to her contention?
R: I spoke to all of the people she had listed as having interrupted her class. There was no indication of a plan to disrupt her class to elicit a negative response. Ms. Smithson has not reported further interruptions from Mr. Johnson, Ms. Wolff, Ms. Villanueva or Ms. Natanauan.

Q: What is the organizational relationship between Ms. Smithson and Ms. Franklin, Ms. Natanaun, and Mr. Johnson?
R: Mr. Johnson works in IT. We receive their services, but they work for a separate contract, and I do not supervise him. Ms. Natanauan is a substitute teacher. Ms. Franklin is an Alcohol & Substance Abuse Counselor. She works for another contract as well. We all work in the same building, but otherwise, there is not a close organizational relationship between Ms. Smithson and the other employees named in this question.

Q: Did you discuss with the individuals regarding why they were interrupting Ms. Smithson's classroom? What did they tell you?
R: Yes. Mr. Johnson was attending to an IT issue. Ms. Natanauan needed a student for the special education department. Ms. Franklin was hoping to speak with a potential (student) client.

Q: Do you believe their entering the classroom was appropriate? If so, why? If not, why not?
R: The colleagues had legitimate reasons for entering Ms. Smithson's classroom. Mr. Johnson has to work on service desk tickets in the order they are received. Ms. Franklin's attempt to speak with a student was appropriate, but her timing was not ideal. We worked out a protocol so that she does not have to interrupt instruction. The Special Education department does occasionally need to pull students for IEP meetings, which are required meetings. Sending a

para-educator (or a substitute in this case) is appropriate, and is generally less intrusive than a phone call or intercom call.

### Claim #1b
Q: What is your knowledge of Ms. Wolff coming into complainant's classroom, standing behind her desk, leaning against her, asking to speak with her about the hypotonic system?
R: Ms. Smithson notified me of the event via email on September 30, 2019.

Q: Did you discuss with Ms. Wolff her actions? If so, what did she tell you? If not, please explain why you did not talk with her.
R: Yes I did discuss Ms. Wolff's actions with her. She did tell me that she walked behind her desk when speaking with her. She also told me she momentarily put her hand on her shoulder. Ms. Wolff is still working the hydroponic system issue.

Q: What is your organizational relationship to Ms. Wolff (supervisor, co-worker)?
R: I am MS. Wolff's immediate supervisor.

### Claim #1c
Q: Please explain why the hydroponic system could not be moved for Ms. Smithson.
R: Ms. Smithson has not been given a definitive answer on the hydroponic system. I was told by Ms. Wolff at first that it could not be moved, later an affirmative that it could, and now it is a maybe. The issue is still being worked through. The hydroponic system is large. When filled it is heavy and needs to be anchored to a wall. The wall has to be made of appropriate materials to support the weight to safely install the system. It also is placed in a system of work orders that are prioritized by cost and urgency.

### Claim #1d
Q: What is your knowledge of Ms. Ester Franklin, coming into Complainant's classroom, attempting to come behind her desk while she was administering a microscope quiz?
R: Ms. Franklin did attempt to go behind Ms. Smithson's desk to speak with her. Ms. Franklin informed me she was trying to be discreet when asking to speak to a student. She is a counselor. She did not want other students to hear the conversation.

Q: Did you discuss with Ms. Franklin her actions? If so, what did she tell you? If not, please explain why you did not talk with her.
R: I did speak with Ms. Franklin. We worked out a protocol for requesting students via e-mail or our front office staff that was less intrusive to teachers.

### Claim #1e
Q: Please explain why Ms. Smithson did not receive materials and instruction to implement the new curriculum.
R: Our biology materials did not arrive on time at the beginning of this school year.

Q: Why did Ms. Mary Corrigan and Mr. Michael Krebsbach receive the material and instruction to implement the new curriculum and Complainant did not receive the material?

Smithson, EU-FY20-013

R: Ms. Corrigan and Mr. Krebsbach teach physics, AP physics, chemistry and human anatomy & physiology. Those materials arrived on time for SY2019/2020.

*Claim #1f*
Q: What is you knowledge of Ms. Wolff approaching Ms. Smithson's daughter during the summer asking her [the daughter] what type of work Ms. Smithson was performing over the summer?
R: I received an EEO complaint on November 14, 2019. That is when I found out about the incident.

Q: Do you think this was appropriate for Ms. Wolff to discuss Ms. Smithson's whereabouts with her [Ms. Smithson's] daughter? If so, why? If not, why not?
R: I would need more information about the conversation to make a judgement.

*Claim #1g*
Q: Please explain what happened when in late March 2019, Ms. Smithson's co-worker, Ms. Susan Holt, approached her in the classroom asking if she would consider leaving the school so that Ms. Holt could stay.
R: On November 14, 2019, in the complaint sent to me by Ms. Sims, I received the complaint, "In late March, 2019, Susan Holt approached Ms. Smithson and asked if she would consider filing for a Voluntary Separation Incentive Program (VSIP)." I had no knowledge of this conversation prior. This claim sounds very different from the one I received in November. I would need to investigate to find out details of a conversation that happened over a year ago. Ms. Holt no longer works for Vilseck High School.

Q: Why would Ms. Holt ask that type of question? Was the school considering making personnel cuts?
R: I do not know that Ms. Holt did ask that type of question. This could be a misunderstanding. I would need more information. We did lose six teaching positions that year. Ms. Holt volunteered to be excessed.

*Claim #1h*
**Claim Dismissed by the EEO Office**

**General Discrimination/Harassment Questions**
Q: Ms. Smithson alleges that she was being treated less favorably then her co-workers listed below and she provides the reason why. Please address her contention for each of the co-workers separately – What is your response to her contention?
   1. **Ms. Snowden** received help from other teachers, and possibly ISS outside of the building that I did not have access to during these crucial first weeks of new curriculum implementation.
R: We were short two teachers at the beginning of SY19/20. Ms. Snowden is not a certified biology teacher. She is a substitute teacher on staff. I connected her with our science department chair and our district Instruction Support Specialist (ISS) to assist her with creating

*Page 7 of 10 Pages*
*Declarant's Initials* ___

000186

plans. We did not yet have the materials for the biology course in the building. The shipment arrived late. Ms. Snowden needed the support content specialists.

Q: Complainant believes she was discriminated against based on her medical condition and the root cause is due to her race. She explains she was successfully utilizing her RA since 2010. There were no problems with her performance of essential and nonessential duties. Her attendance was nearly perfect; in that she rarely called in sick or late for work. She believes that the agency targeted her RA and conditions to cause adverse reactions in my performance and health. What is your response to her contention?
R: No part of the conversation has to do with race. I received guidance in 2018 that let me know that the previous accommodations did not meet the definition of reasonable accommodations. There were many of her essential duties that could not be completed when she was arriving late to school. Her instruction was fully successful, but she was not able to collaborate, meet with parents, attend trainings, and conferences which are all essential tasks.

Q: Complainant believes she was discriminated against based on her filing a prior EEO complaint because adverse actions against her RA took place directly after she filed EEO complaints in SY 2017 and 2018. What is your response to her contention?
R: This is untrue. The only reason her plan changed is because I received updated guidance on the reasonable accommodation program. I only sought the guidance because I received an e-mail from Ms. Smithson on April 25, 2018 asking for an update (addition) to her plan.

Q: Ms. Smithson contends that she has complained to you about co-workers violating her personal space and her issues with not receiving technology and resources. What action have you taken as a result of Ms. Smithson complaining to you?
R: All complaints were investigated. All employees were counseled and or given guidance that has prevented repeat behaviors.

Q: Were you aware of any policies in place designed to prevent harassment or hostile work environment? If so, where are these policies (bulletin boards or intranet)?
R: We receive bi-annual training designed to prevent harassment and/or a hostile work environment. The training is online.

Q: Have you attended any training regarding anti-harassment/hostile work environment? If so, what was the training and when did you take it?
R: I have attended the trainings annually. I last received training in August, 2019.

Q: How would Ms. Smithson become aware of the policies in place designed to prevent harassment or hostile work environment?
R: Ms. Smithson also receives the training bi-annually.

Q: If not listed above, did Ms. Smithson complain to you about the alleged harassment? If so, when? What did she say?

R: Not that I recall.

Q: Did Ms. Smithson tell you that she feel discriminated against based on her race and medical conditions, in reprisal for complaining? If so, what did she tell you?
R: Ms. Smithson did not tell me, but I have seen the declarations where she has claimed discrimination based on race, medical conditions and/or reprisal.

Q: Was an agency investigation conducted into Ms. Smithson's allegations of harassment? If so, approximately when, who conducted investigation, and what was the outcome/recommendation?
R: The investigation is ongoing.

Q: What other actions, if any, did you or other management officials take in response to Complainant's allegations?
R: Ms. Smithson has been offered mediation, which she has declined. I have had numerous meetings with office staff and teachers where we have discussed ways to minimize interruptions to instruction.

Q: Which management officials took the action?
R: Marc Villarreal, Principal Vilseck High School. Shawn Rodman, Assistant Principal, Vilseck High School.

Q: Did this action stop the harassment?
R: I continue to work with Ms. Smithson on the complaints received. I sincerely try to provide the most hospitable work environment possible, within the parameters we are permitted to work within. When complaints have been made they have been addressed, and rarely, if ever repeated.

Q: How can you be certain that management's actions stopped the harassment?
R: When complaints have been made they have been addressed, and rarely, if ever repeated.

**Conclusion**
Q: Regarding any of the claims or issues accepted for investigation, did you take any actions, make any decisions, or engage in any behavior for the purpose of discriminating against, or harassing Complainant because of her race, medical conditions or in reprisal for complaining?
R: Absolutely not.

Q: Regarding any of the claims or issues accepted for investigation under, do you believe that any involved supervisor or employee took any actions, made any decisions, or engaged in any behavior for the purpose of discriminating against, Complainant because of her race, medical conditions or in reprisal ?
R: No.

Q: Do you have any evidence you would like to submit in connection with this investigation? If so, please label and attach to this statement.
R: Not at this time. I have copied and pasted from documents into my responses.

Smithson, EU-FY20-013

Q: Is there anything you would like to add to any of your testimony in connection with any of the claims or issues accepted for investigation? If so, please do so here.
R: N/A.

## END OF STATEMENT

I, **Marc Villarreal**, declare under penalty of perjury, that the foregoing is true and correct.

_____          _2020 MAY 05_
(Declarant's Signature)                                (Date)

Page 10 of 10 Pages
Declarant's Initials ____

000189



```
SMITHSON
EXHIBIT
2

11/16/2022
```

**From:** Smithson, Tamika, Ms., CIV, OSD/DoDEA-Europe Tamika.Smithson@DODEA.EDU
**Subject:** FW: Biology Online Textbook
**Date:** August 23, 2019 at 10:58 AM
**To:** Schiele, Joy, F, CIV, OSD/DoDEA-Europe Joy.Schiele@DODEA.EDU
**Cc:** joy.shiele@student.dodea.edu, Villarreal, Marc, Mr., CIV, OSD/DoDEA-Europe Marc.Villarreal@DODEA.EDU

Ms. Schiele,

Mr. Villarreal asked if I could email you about the ongoing issue that I am having with the Dimensions and Back in Black logins. After more than several attempts, I was able to get back into the Back in Black system for chemistry. As of now, I have access to that account.
Currently, I am still unable to log into the Dimensions account. I have sent several requests for a new password. Some of those requests have gone unanswered. Other requests were answered, but I was still unable to successfully set up a login and password. Mary Corrigan also made a few unsuccessful attempts under my name, however, she was able to help other colleagues gain access to their accounts.
If there is anything that you can do to assist, please let me know. Thank you.

Tamica Smithson


-----Original Message-----
From: Smithson, Tamika, Ms., CIV, OSD/DoDEA-Europe
Sent: Friday, August 23, 2019 10:47 AM
To: Moellendick, Cora, Ms., CIV, OSD/DoDEA-Europe <Cora.Moellendick@DODEA.EDU>; Snowden, Payson V, Ms., CIV, OSD/DoDEA-Europe <Payson.Snowden@dodea.edu>; Thornbrugh, Tracy, Ms., CIV, OSD/DoDEA-Europe <Tracy.Thornbrugh@DODEA.EDU>
Cc: Villarreal, Marc, Mr., CIV, OSD/DoDEA-Europe <Marc.Villarreal@DODEA.EDU>; Rodman, Shawn, Mr., CIV, OSD/DoDEA-Europe <Shawn.Rodman@dodea.edu>; Schiele, Joy, F, CIV, OSD/DoDEA-Europe <Joy.Schiele@DODEA.EDU>
Subject: RE: Biology Online Textbook

Hello Cora,

This sounds like a good solution until we receive the textbooks. I have been having some problems logging into the online biology resources as well; but I will address that with our Science ISS. Having the computers on hand is a great start. Thank you for your support.

V/R,
Tamica

-----Original Message-----
From: Moellendick, Cora, Ms., CIV, OSD/DoDEA-Europe
Sent: Friday, August 23, 2019 10:35 AM
To: Smithson, Tamika, Ms., CIV, OSD/DoDEA-Europe <Tamika.Smithson@DODEA.EDU>; Snowden, Payson V, Ms., CIV, OSD/DoDEA-Europe <Payson.Snowden@dodea.edu>; Thornbrugh, Tracy, Ms., CIV, OSD/DoDEA-Europe <Tracy.Thornbrugh@DODEA.EDU>
Cc: Villarreal, Marc, Mr., CIV, OSD/DoDEA-Europe <Marc.Villarreal@DODEA.EDU>; Rodman, Shawn, Mr., CIV, OSD/DoDEA-Europe <Shawn.Rodman@dodea.edu>
Subject: Biology Online Textbook

Good Morning,
So I hear that the HS Bio books are not in the building and that your student will need to access the textbook electronically. I'm assuming you will need daily access to a class set of computers. Instead of tying up the whole pod's COW, I would like to propose that we use two CROME COWS (AKA CROWS) until the textbooks arrive. We can store each CROW in each of your rooms and they hold 27 laptops. They do not require student login each time it is used rather just students google login but they do not have print capabilities. We could maybe work on that possibility if it is necessary, Tracy has seen an interesting printing option we could try out.

Let me know if this would work for you or if you have some thoughts on a solution to the no books dilemma.

Thanks
Cora