UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMICA J. SMITHSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-02193-JRS-MJD ) |
| LLOYD AUSTIN, III Secretary; Department of Defense, | ) ) ) ) |
| Defendant. | ) |

**Order on Motion for Summary Judgment**

## I.  Introduction

This is an employment discrimination case.  Tamica Smithson, a high school science teacher here proceeding *pro se*, claims her employer, the Department of Defense Education Activity ("DoDEA"), discriminated against her because of her race, color, gender, and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*[1] Smithson in support of her claims describes a series of perfectly innocuous workplace incidents that are objectively inoffensive and, besides, have nothing to do with Smithson's membership in protected classes.

Now before the Court is the DoDEA's motion for summary judgment.  (ECF No. 15.)

---

[1] This is Smithson's second case against the DoDEA.  In the first, *Smithson v. Miller*, No. 120CV03021JRSMJD, 2022 WL 4098583, at *6 (S.D. Ind. Aug. 4, 2022), currently pending on appeal at the Seventh Circuit, this Court granted summary judgment in favor of the DoDEA on hostile work environment and failure-to-accommodate claims.

## II. Legal Standard

The legal standard on summary judgment is well established:

> Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba* [*v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)] (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 [] (1986)). A theory "too divorced from the factual record" does not create a genuine issue of material fact. *Id.* at 721. "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020).

*Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021). The Court applies that standard here.

## III. Discussion

### A. Facts

The facts in this case are not well organized. Smithson's "Statement of Material Facts in Dispute" does not respond to the DoDEA's (nonchronological) "Statement of Material Facts Not in Dispute," as required by Local Rule 56-1. S.D. Ind. Local Rule 56-1(b). Instead, Smithson has presented her own factual narrative (also, but differently, nonchronological), in which she both asserts historical facts and points out supposed inconsistencies in deposition witness testimony. Some of Smithson's disputed facts seem to dispute her own allegations and to reinforce the DoDEA's version of events. It seems to the Court that—after straightening out the timelines and allowing for Smithson's point of view—the underlying factual narratives coincide. There are not disputed facts so much as there are disputed

characterizations of events as offensive or inoffensive. But where Smithson has failed to address a factual matter raised in the DoDEA's well-supported motion, the DoDEA's facts will control. S.D. Ind. Local Rule 56-1(f)(1)(A).

Smithson taught in Vilseck, Germany, at a DoDEA school for the children of military families. (Pl.'s Resp. 2, ECF No. 28.) Her case is built on a series of workplace incidents there,[2] which she claims amount to unlawful discrimination.

In March 2019, the Vilseck high school cut six jobs. Smithson alleged that a fellow science teacher, Ms. Holt, asked if Smithson would voluntarily seek relocation within the DoDEA system so that she, Ms. Holt, could remain in Vilseck. (Def.'s Br. Supp. 12–13, ECF No. 26.) In a rare factual dispute, the DoDEA contests whether the interaction ever occurred: Ms. Holt averred that she voluntarily resigned her position in Vilseck, had sold her house there before the alleged conversation with Smithson, and was at the time having a house built in Florida. (*Id.* at 13.) Smithson does not address that contention in her response brief.

In July 2019, a coworker encountered Smithson's daughter out and about in Vilseck—at a kebab stand—and asked whether her mother was well. (Def.'s Br. Supp 12, ECF No. 26.)

In August 2019, Smithson did not receive her biology textbooks on time for the start of the school year because they were backordered. (Pl.'s Resp. 6, ECF No. 28.)

---

[2] There are potential problems with administrative exhaustion; the incidents and allegations in Smithson's EEOC charges do not align perfectly with her claims in this suit. Nonetheless the Court prefers to accord Smithson some leeway as a *pro se* litigant and to address Smithson's claims on the merits.

In September 2019, Smithson's coworkers thrice entered her classroom while she was teaching, disrupting class. Once, a coworker in IT came in to help with computer issues. (Pl.'s Resp. 4, ECF No. 28.) Another time, a counselor came in to see students. (Def.'s Br. Supp. 5, ECF No. 26.) The third time, a special-ed aide came in to see a student. (*Id.*)

Later in September 2019, another of Smithson's coworkers came behind her desk while she was teaching, touched her on the shoulder, and leaned a hip against her shoulder. (*Id.* at 6.) This coworker had come to discuss the placement of a demonstration hydroponic system (for growing plants without soil), which Smithson wanted in her classroom. (Pl.'s Resp. 5, ECF No. 28.)

In October 2019, a school counselor came into Smithson's classroom to discuss a sensitive student issue with her. She attempted to approach Smithson behind her desk, but Smithson "blocked her out." (Def.'s Br. Supp. 9–10, ECF No. 26.)

In December 2019, the school decided not to put the hydroponic system in Smithson's classroom. (*Id.* at 8.) The parties dispute whether Smithson ultimately wanted the hydroponic system in her classroom; there is an email exchange in which the school offered to place it in Smithson's classroom and Smithson demurred, (ECF No. 25-7); photographs of the system and the classroom reveal that it would not have fit in any event, (ECF No. 25-6).

At another point Smithson discovered that the new hire she had been assigned to mentor was also receiving support from another teacher. (Def.'s Br. Supp. 14, ECF No. 26.)

In February 2020, a female coworker allegedly hugged Smithson. (*Id.* at 15.)

In January 2021, Smithson allegedly had trouble logging into various software products. (Pl.'s Resp. 6, ECF No. 28.) She testified that her coworkers helped her and that she does not suspect any intent to deny her access. (Def.'s Br. Supp. 16, ECF No. 26.)

In August 2021, Smithson, who had been reassigned from the physical Vilseck school to a DoDEA "Virtual School," was removed from the Vilseck email distribution list and had her Vilseck work computer reassigned to another teacher. (Def.'s Br. Supp. 17, ECF No. 26.) When Smithson emailed the Vilseck school to ask about keys, she did not receive a response for a week, until the principal responded that they were happy to arrange a time for Smithson to come in for what she needed. (*Id.*; Pl.'s Resp. 7–8, ECF No. 28.)

Finally, in January 2022 a male coworker complimented Smithson's blouse and might have touched the blouse material at the wrist. (Def.'s Br. Supp. 17, ECF No. 26; Pl.'s Resp. 13, ECF No. 28.)

The Court read the record in this case waiting for the other shoe to drop—but there is nothing more. The above events are the entirety of Smithson's allegations.

### B. Law

Smithson claims that the interactions she describes amount to unlawful discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

> Although there are many tests and rubrics for viewing discrimination claims, it is important to recall that, at the end of the day they are all

> merely convenient ways to organize our thoughts as we answer the only question that matters: when looking at the evidence as a whole, "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action."

*Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). Here, Smithson neither alleges nor can prove a "discharge or other adverse employment action." *Id.* She seems to claim instead that she was subject to a hostile work environment. To prove such a claim,

> A plaintiff must demonstrate that (1) she was subject to unwelcome harassment; (2) the harassment was based on disability or age or another protected category; (3) the harassment was sufficiently severe or pervasive, both subjectively and objectively, so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability.

*Id.* at 441 (citing *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 714–15 (7th Cir. 2021); *Tyburski v. City of Chicago*, 964 F.3d 590, 601–02 (7th Cir. 2020); *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018)). The *Brooks* court goes on to note that "[i]nsults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance." *Id.*

Here, of course, there are not even "insults, personal animosity, and juvenile behavior." *Id.* The incidents are perfectly innocuous. There is no way the incidents could "objectively" be construed as "harassment," much less "severe or pervasive" harassment. *Id.*; *see also* "Harassment and hostile environment: Cumulative Supplement," 14A C.J.S. Civil Rights § 224 (collecting cases in which even reprehensible conduct may not amount to a hostile work environment). Nor is there

any evidence that the incidents had anything to do with "disability or age or another protected category," even if Smithson believed them to be "unwelcome harassment." *Brooks*, 39 F.4th at 441. As it happens, Smithson describes herself as "Black/African Descent," "Female/Woman," and disabled, (Pl.'s Amd. Compl. 5, ECF No. 14), but no one reading the record would know that from the incidents as described.

The Court need do no more to dispose of this case. It comes nowhere close to alleging, much less proving, unlawful conduct by the DoDEA.

### IV.   Conclusion

The DoDEA's Motion for Summary Judgment, (ECF No. 25), is **granted.**

None of Smithson's claims survive; this case is over.

Final judgment shall issue separately.

**SO ORDERED.**

Date: 12/19/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TAMICA J. SMITHSON
CMR 411
Box 3668
APO 09112

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov